# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| EDWIN JERMAINE DANIELS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 17-CV-0011-TCK-JFJ |
| | ) | |
| JIM FARRIS,[1] | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Before the Court is the 28 U.S.C. § 2254 petition for writ of habeas corpus (Dkt. 1), filed by Petitioner Edwin Jermaine Daniels, a state inmate appearing pro se. Respondent filed a response (Dkt. 7) in opposition to the petition and provided the state court record (Dkts. 7, 8, 9) necessary to adjudicate Petitioner's claims. Petitioner did not file a reply. For the reasons that follow, the Court finds this matter can be resolved without an evidentiary hearing, finds Petitioner is not entitled to federal habeas relief, and denies the petition for writ of habeas corpus.

## BACKGROUND

Petitioner seeks federal habeas relief from the judgment and sentence entered against him in the District Court of Tulsa County, Case No. CF-2012-3490. In that case, a jury convicted Petitioner of first-degree murder, in violation of OKLA. STAT. tit. 21, § 701.7, and shooting with intent to kill, in violation of OKLA. STAT. tit. § 21, § 652(A). Dkt. 8-12, Tr. Trial vol. 5, at 77-80;

---

[1] According to the Oklahoma Department of Corrections, Petitioner is currently incarcerated at the Mack Alford Correctional Center (MACC) in Stringtown, Oklahoma. *See* Oklahoma Department of Corrections Offender Search, https://okoffender.doc.ok.gov, last visited April 1, 2020. The Court therefore substitutes the MACC's warden, Jim Farris, in place of Janet Dowling as party respondent. The Clerk of Court shall note this substitution on the record.

Dkt. 8-16, O.R., at 28.[2]  By returning a guilty verdict, the jury found, beyond a reasonable doubt, that Petitioner killed Kayla Ferrante on May 27, 2012, "by shooting . . . a semi-automatic rifle into a vehicle [Petitioner] believed was occupied by Justin a.k.a. 'Pud' Render and Kenneth Demarco a.k.a. 'Lil Boosie' Ferguson" and that Petitioner "wrongfully and intentionally pointed, aimed and fired" the same rifle at Neikko Perez, the driver of the vehicle occupied by Ferrante, with the intent to kill Render and Ferguson, both of whom were rival gang members.  Dkt. 8-16, O.R., at 28; Dkt. 8-10, Tr. Trial vol. 3, at 91, 95-96, 119.  The jury recommended a sentence of life with the possibility of parole for each conviction and a $10,000 fine for the conviction of shooting with intent to kill.  Dkt. 8-12, Tr. Trial, vol. 5, at 77-80.  On June 25, 2014, the trial court sentenced Petitioner accordingly and ordered the two life sentences to be served consecutively to each other and consecutively to the 307-year prison sentence previously imposed against Petitioner in the District Court of Tulsa County, Case No. CF-2012-4773.[3]  Dkt. 8-15, Tr. Sent. Hr'g, at 23-26.

Represented by counsel, Petitioner filed a timely direct appeal raising four issues.  He claimed (1) the trial court erroneously instructed the jury regarding the fine that could be imposed upon conviction of shooting with intent to kill, (2) the trial court erroneously omitted an unrequested instruction regarding the credibility of an informant, (3) trial counsel was ineffective in three respects, and (4) the prosecutor committed misconduct during closing argument.  Dkt. 7-

---

[2] For consistency, the Court's record citations refer to the CM/ECF pagination.

[3] Unbeknownst to the jury in the Ferrante murder trial, Petitioner was arrested on July 26, 2012, as a suspect in a string of armed robberies. Dkt. 8-16, O.R., at 35-38.  While Petitioner was awaiting trial for murder and shooting with intent to kill, a jury convicted Petitioner, in Tulsa County Case No. CF-2012-4773, of one count of attempted robbery with a firearm, five counts of first-degree burglary, five counts of robbery with a firearm, two counts of assault while masked or disguised, and two counts of kidnapping, and the trial court in that case imposed a total prison sentence of 307 years. Dkt. 8-15, Tr. Sent. Hr'g, at 23-26; *see also Daniels v. Dowling*, No. 16-CV-0058-TCK-PJC, 2019 WL 1387699, at *1 (N.D. Okla. Mar. 27, 2019).

2, Pet'r App. Br., at 15-24.  Petitioner filed an application for an evidentiary hearing and motion

to supplement the record to further develop his ineffective-assistance-of-counsel claim, citing Rule

3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2003).

Dkt. 7-3, at 1-2.  In a published summary opinion filed February 10, 2016, in Case No. F-2014-

595, the Oklahoma Court of Criminal Appeals (OCCA) denied Petitioner's request for an

evidentiary hearing and affirmed his convictions and sentences.  Dkt. 7-5, *Daniels v. State*, 369

P.3d 381, 2016 OK CR 2 (Okla. Crim. App. 2016) (hereafter, "OCCA Op."), at 4-6.  Petitioner

did not seek further direct review by filing a petition for writ of certiorari with the United States

Supreme Court, and he did not seek postconviction relief in state court.  Dkt. 1, at 2; Dkt. 7, at 2.

Proceeding pro se, Petitioner filed the instant federal habeas petition (Dkt. 1) on January

9, 2017.  Relying on the arguments from his direct appeal brief, Petitioner seeks federal habeas

relief on the same four issues he presented to the OCCA on direct appeal.  Dkt. 1, at 2-4; Dkt. 7-

2, Pet'r App. Br., at 15-24.  Respondent urges the Court to deny the habeas petition.  Dkt. 7.

## DISCUSSION

### I.    Legal framework

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) significantly limits

a federal court's authority to grant federal habeas relief in three ways.  First, a federal court may

grant habeas relief to a prisoner in custody pursuant to a state-court judgment "only on the ground

that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United

States."  28 U.S.C. § 2254(a); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only

noncompliance with federal law that renders a State's criminal judgment susceptible to collateral

attack in the federal courts.").  Second, a federal court may grant habeas relief only if the prisoner

has either (1) exhausted available state-court remedies, 28 U.S.C. § 2254(b)(1)(A), by "fairly

present[ing] the substance of his federal habeas claim[s] to state courts," *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002), or (2) demonstrated a complete absence of available state remedies or an absence of effective state remedies, § 2254(b)(1)(B).  Third, a federal court may grant habeas relief to a state prisoner on a federal claim that was adjudicated on the merits in state court only if the prisoner first demonstrates that the state court's adjudication of that claim "resulted in a decision that" either (1) "was contrary to . . . clearly established Federal law," 28 U.S.C. § 2254(d)(1),[4] (2) "involved an unreasonable application of clearly established Federal law," *id.*, or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  Federal habeas jurisprudence imposes a fourth limitation.  Under the procedural default doctrine, a federal court may grant habeas relief on "federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule"—only if the prisoner demonstrates either cause for the procedural default and resulting prejudice or that failure to review the claim will result in a fundamental miscarriage of justice.  *Davila v. Davis*, 137 S. Ct. 2058, 2064-65 (2017); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Even if a state prisoner presents a timely habeas petition, asserts only properly exhausted federal claims, and either satisfies § 2254(d)'s standards or makes the showings necessary to overcome the procedural default of his federal claims, the prisoner is not necessarily entitled to federal habeas relief.  Rather, the prisoner is merely entitled to de novo review of his federal claims.  *See Cuesta-Rodriguez v. Carpenter*, 916 F.3d 885, 898 (10th Cir. 2019) ("Claims that the state

---

[4] As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated in "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (quoting *Terry Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

4

court didn't adjudicate on the merits, we review de novo."); *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014) (explaining that satisfaction of § 2254(d)'s standards "effectively removes AEDPA's prohibition on the issuance of a writ" and "requires [a federal habeas court] to review de novo" petitioner's claims). And, even if the federal court's independent review reveals a constitutional error, the court "must assess [the error's] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). Under the *Brecht* standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995).

## II. Analysis

As previously stated, Petitioner seeks habeas relief on four grounds:

- the trial court erroneously instructed the jury that a $10,000 fine was mandatory upon conviction of the charge in count two—shooting with intent to kill (ground one);

- the trial court failed to give an instruction advising the jury to consider with caution the credibility of an informant—specifically, the State's key witness, Damario Adams (ground two);

- trial counsel performed deficiently and prejudicially by (1) failing to obtain and review before trial Detective Vic Regalado's July 26, 2012 videotaped interview of Damario Adams, (2) failing to object to the erroneous jury instruction mandating a fine as to count two, and (3) failing to request a cautionary jury instruction on the credibility of informants (ground three); and

- the prosecutor committed misconduct by making inflammatory remarks during closing

5

argument (ground four).

Dkt. 1, at 2-4; Dkt. 7-2, Pet'r App. Br., at 15-24.

Respondent contends 28 U.S.C. § 2254(a) bars habeas relief as to grounds one and two because the alleged instructional errors raise only issues of state law.   Dkt. 7, at 7-10. Alternatively, Respondent argues, to the extent Petitioner's claims in grounds one and two assert federal due process violations, the alleged instructional errors did not deprive Petitioner of his constitutional right to a fair trial.  *Id.* at 12-13.   Respondent contends 28 U.S.C. § 2254(d) bars relief as to grounds three and four because the OCCA's adjudication of Petitioner's ineffective-assistance-of-counsel claim and prosecutorial-misconduct claim did not result in a decision that was contrary to, or that involved an unreasonable application of, clearly established federal law. *Id.* at 14-20.

### A.    Instructional errors (grounds one and two)

In ground one, Petitioner claims he was deprived of his Fourteenth Amendment right to due process because the trial court instructed the jury, in Instruction No. 35, that "[t]he crime of SHOOTING WITH INTENT TO KILL is punishable by imprisonment in the state penitentiary not exceeding life and a fine not exceeding $10,000." Dkt. 1, at 2; Dkt. 7-2, Pet'r App. Br., at 15-16.  Petitioner argues the language of this instruction improperly mandated imposition of a fine when, under state law, the imposition of a fine not exceeding $10,000 was discretionary.  Dkt. 7-2, Pet'r App. Br., at 16; *see* OKLA. STAT. tit. 21, § 652(A) (defining punishment for shooting with intent to kill but prescribing no specific fine); OKLA. STAT. tit. 21, § 64(B) (providing jury with discretion to impose fine "not exceeding" $10,000 for "any felony punishable by imprisonment in any jail or prison, in relation to which no fine is prescribed by law").

Noting Petitioner's failure to object to the giving of this jury instruction, the OCCA

reviewed his claim under its plain-error standard.  Dkt. 7-5, OCCA Op., at 2-3.  Applying state

law, the OCCA agreed with Petitioner that the language of the challenged instruction incorrectly

suggested that imposing a fine not exceeding $10,000 was mandatory upon Petitioner's conviction

for shooting with intent to kill.  *Id.* at 3.  But the OCCA determined that error did not require

reversal because the jury had discretion to impose a maximum fine of $10,000 in addition to

imprisonment.  *Id.*; *see* OKLA. STAT. tit. 21, § 64(B).  The OCCA reasoned that the jury's decision

"to give the maximum $10,000 fine, when [it] could have rendered much less," demonstrated that

the instructional error "did not result in a miscarriage of justice or violate [Petitioner's] rights, as

a proper instruction would not have changed the rendering of the fine in this case."  Dkt. 7-5,

OCCA Op., at 3.

In ground two, Petitioner claims the trial court erred when it omitted the following

instruction:

> The testimony of an informer who provides evidence against a defendant for
> personal advantage must be examined and weighed by you with greater care than
> the testimony of an ordinary witness.  Whether the informer's testimony has been
> affected by interest or by prejudice against the defendant is for you to determine.

Dkt. 7-2, Pet'r App. Br., at 18 (quoting Oklahoma Uniform Jury Instructions (OUJI)-CR (2d) 9-

43 (2000 Supp.) (Evidence-Credibility of Informers)).  Petitioner argues this instruction was

necessary for the jury to properly assess the credibility of the State's key witness, Damario Adams.

*Id.* at 18-19.

Noting Petitioner's failure to request this instruction, the OCCA reviewed this claim for

plain-error.  Dkt. 7-5, OCCA Op., at 2, 4.  The OCCA found the trial court's failure to give an

instruction on the credibility of an informant did not require reversal because (1) the trial court

gave the general instruction on the credibility of witnesses, OUJI-CR (2d) 10-8, (2) "the jury was

fully aware of Adams' credibility issues," and (3) trial counsel "vigorously" challenged Adams'

credibility on cross-examination.  Dkt. 7-5, OCCA Op., at 4.

For two reasons, the Court agrees with Respondent that neither instructional error warrants federal habeas relief.  First, to the extent Petitioner complains that the given instruction regarding the applicable fine for count two and the omitted instruction regarding the credibility of an informer did not properly inform the jury as to the applicable state law, he fails to state cognizable federal habeas claims in grounds one and two.  28 U.S.C. § 2254(a); *Wilson*, 562 U.S. at 5.

Second, to the extent Petitioner complains that the instructional errors were so egregious as to deprive him of a fair trial, § 2254(d) bars habeas relief.  Generally, federal habeas relief is only available if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense."  *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990) (quoting *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979)).  Petitioner's burden under this test is "greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  On habeas review, "[t]he question . . . is not whether the instruction is 'undesirable, erroneous, or even "universally condemned,"' but whether the instruction so infected the trial that the resulting conviction violates due process."  *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (quoting *Henderson*, 431 U.S. at 154).  Further, when the alleged instructional error arises from the omission of an instruction rather than the provision of an erroneous instruction, the burden is especially heightened.  *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).  "[A]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Id.* (quoting *Maes*, 46 F.3d at 984).

Here, in rejecting both of Petitioner's claims of instructional error, the OCCA reviewed those claims for plain error and found that neither alleged error violated Petitioner's substantial rights or resulted in a miscarriage of justice.  Dkt. 7-5, OCCA Op., at 2-4.  By applying its plain-

error test, the OCCA identified and applied the correct legal principle for analyzing a Fourteenth Amendment due-process claim. *See Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015) ("Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process."). As a result, this Court must defer to the OCCA's decision on the alleged instructional errors unless Petitioner demonstrates that the OCCA's application of the federal due-process test was objectively unreasonable. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) ("Because the OCCA applied the same test we apply to determine whether there has been a due-process violation, we must defer to its ruling unless it 'unreasonably appli[ed]' that test" (alteration in original) (quoting 28 U.S.C. § 2254(d))).

Petitioner fails to argue, let alone demonstrate, that he can make the necessary showings under § 2254(d). Regardless, the Court has reviewed the trial transcripts and considered the jury instructions as a whole to measure the reasonableness of the OCCA's decision. And the Court finds nothing objectively unreasonable about the OCCA's determination that neither alleged instructional error deprived Petitioner of his fundamental right to a fair trial. As a result, § 2254(d) bars federal habeas relief, and the Court denies the habeas petition as to grounds one and two.

**B.      Ineffective assistance of trial counsel (ground three)**

In ground three, Petitioner claims he was deprived of his Sixth Amendment right to the effective assistance of trial counsel because (1) counsel failed to either obtain or review a copy of Detective Regalado's videotaped interview of Damario Adams, (2) counsel failed to object to the trial court's instruction regarding a mandatory fine upon conviction of shooting with intent to kill, and (3) counsel failed to request a jury instruction on the credibility of informants. Dkt. 1, at 3; Dkt. 7-2, Pet'r App. Br., at 19-22.

Petitioner raised this Sixth Amendment claim on direct appeal, and the OCCA rejected it.

Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the OCCA determined that Petitioner could not "show that he was prejudiced by the failure of counsel to preserve for review the alleged instructional errors outlined in propositions one and two, by either objecting to instructions given or requesting additional instructions." Dkt. 7-5, OCCA Op., at 4-5. As to trial counsel's alleged failure to "secure, review, and utilize a video recording of witness Adams' statement to police," the OCCA first denied Petitioner's request for an evidentiary hearing, stating, "Appellant has not shown that this recording actually exists, and, if it does, that there is any information helpful to his case." *Id.* at 5. The OCCA further reasoned, "[t]here is no evidence that counsel was ineffective, as appellate counsel has not provided this [c]ourt with any evidence." *Id.* The OCCA therefore concluded that "[t]his portion of the proposition must be denied and the motion for an evidentiary hearing is also denied." *Id.* Finally, the OCCA stated, "Appellant has not shown that he was deprived of constitutionally required effective assistance of counsel; thus, this proposition must be denied." *Id.*

Respondent contends § 2254(d) bars habeas relief as to ground three because the OCCA applied *Strickland* in an objectively reasonable manner. Dkt. 7, at 14-20. The Court agrees, in part. Under *Strickland*, a defendant alleging a violation of his Sixth Amendment right to the effective assistance of counsel must show both (1) that counsel's performance was deficient and (2) that counsel's deficient performance resulted in prejudice. 466 U.S. at 692. Under the performance prong, a court must determine whether the petitioner has shown that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. And, in making this determination, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of

10

the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90.  Under the prejudice prong, the court must determine whether the petitioner has established "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

Because the OCCA applied *Strickland*, Petitioner cannot obtain habeas relief on his Sixth Amendment claim unless he first shows either (1) that the OCCA's application of *Strickland* to the facts of his case was objectively unreasonable or (2) that its decision was based on an unreasonable determination of the facts based on the record presented to the state court.  28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) (noting that on habeas review of a *Strickland* claim rejected by the state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").  If Petitioner makes the necessary showings under § 2254(d), the Court is then free to independently review the ineffective-assistance-of-counsel claim under *Strickland*'s two-part test, without deference to the OCCA's decision.  *Milton*, 744 F.3d at 670-71.

The Court agrees with Respondent that § 2254(d) bars habeas relief as to the portion of ground three that alleges trial counsel was ineffective with respect to the instructional errors alleged in grounds one and two.  As previously discussed, the OCCA found Petitioner suffered no prejudice relative to the alleged instructional errors.  It was not objectively unreasonable for the OCCA to determine, under *Strickland*, that Petitioner likewise suffered no prejudice when trial counsel failed to request the informant-credibility instruction and failed to object to the language of the instruction regarding the fine that could be imposed on count two.  Thus, § 2254(d) bars relief and the Court denies the petition as to the portion of ground three alleging trial counsel was

ineffective with respect to the alleged instructional errors.

But the Court does not agree with Respondent that § 2254(d) bars relief as to the portion of ground three alleging trial counsel was ineffective for failing to obtain and review before trial the videotape from Detective Regalado's July 26, 2012 interview of Damario Adams.  As previously stated, in denying relief on this portion of Petitioner's Sixth Amendment claim, the OCCA faulted Petitioner for failing to show that Adams' videotaped interview "actually exists, and, if it does, that there is any information helpful to his case." Dkt. 7-5, OCCA Op., at 5.  For two reasons, the OCCA's decision on this portion of Petitioner's ineffective-assistance-of-counsel claim rests on an unreasonable determination of the facts presented in state court.

First, as Respondent concedes, the state court record clearly shows that Detective Regalado videotaped Adams' interview.  Regalado testified at the preliminary hearing and at trial that he videotaped the interview.  *See* Dkt. 8-1, Tr. Prelim. Hr'g, at 42 ("[Adams] informed me during a recorded interview . . .. that he spoke to [Petitioner] in reference to the night that Kayla Ferrante was murdered and provided certain details . . .."); Dkt. 8-11, Tr. Trial vol. 4, at 114 (responding, "Yes," to defense counsel's question: ". . . when you first made contact with Mr. Adams, with Damario, did you videotape that contact?").  In addition, materials submitted to the OCCA with Petitioner's application for an evidentiary hearing include what appears to be an excerpt from Regalado's interview notes.  Dkt. 7-3, at 6.  Those notes (1) specifically refer to Regalado's interview of Adams, (2) state, "The following information was relayed to me during the audio/video recorded interview that took place in interview room #1 on July 26, 2012," and (3) describe several statements Adams made during the interview.  *Id.*  Thus, the record that was presented to the OCCA on direct appeal contained more than one explicit reference demonstrating the existence of a videotape of Adams' interview.  The OCCA's statement that Petitioner failed to

show the videotape existed was therefore an unreasonable determination of the facts presented in state court.

Second, it was also unreasonable for the OCCA to determine that Petitioner failed to demonstrate how information from Adams' videotaped interview might have been "helpful to his case." Dkt. # 7-5, OCCA Op., at 5. It is obvious from the record that Adams was the State's key witness at trial. Evidence recovered from the scene of the shooting, near the intersection of 15th Street and 122nd East Avenue, in Tulsa, Oklahoma, established that three bullets penetrated the back of the Cadillac occupied by Kayla Ferrante and Neikko Perez; two went through the rear bumper and one went through the license plate. Dkt. 8-9, Tr. Trial vol. 2, at 139, 156, 161-62. The bullet that penetrated the license plate traveled through the back seat and the front passenger seat, pierced Ferrante's chest, and exited the Cadillac through the front windshield. *Id.* Law enforcement officers found six 7.62 x 39 caliber shell casings on the north side of 15th Street nearly 100 feet to the east of the Cadillac's location. Dkt. 8-10, Tr. Trial vol. 3, at 189-93. Sergeant Dave Walker located a mailbox on the south side of 15th Street that had been hit by a bullet. Dkt. 8-9, Tr. Trial vol. 2, at 167-70. He recovered copper jacketing from the mailbox that was consistent with copper jacketing found in the trunk of the Cadillac. *Id.* at 174-79. The location of the bullet holes in the Cadillac and the mailbox, the location of the spent shell casings, and the caliber of the shell casings suggested the shooter fired an assault rifle from the passenger side of a moving vehicle that was behind the Cadillac. *Id.* at 165, 169-70; Dkt. 8-10, Tr. Trial vol. 3, at 189-93. Two people who lived on 123rd East Avenue at the time of the shooting testified that they heard gunshots around midnight on May 26, 2012, and, shortly thereafter, saw a light-colored four-door car driving away from 15th Street, heading north on 123rd East Avenue. Dkt. 8-9, Tr. Trial vol. 2, at 115-19, 124-31. Neither person could identify the occupants. *Id.* at 122-23, 128, 132.

Detective Vic Regalado, the lead homicide investigator, testified at trial that nothing in either Perez's or Ferrante's backgrounds, or the background of the owner of the silver Cadillac, suggested that Perez, Ferrante or the owner were the intended targets of the shooting. Dkt. 8-11, Tr. Trial vol. 4, at 68-73. Regalado pursued several leads but had no "credible suspects" until he received a call from Detective Maxwell Ryden on July 26, 2012. *Id.* at 72-77, 89-90. Detective Ryden testified that on July 26, 2012, Damario "Rio" Adams arrived at an apartment where Ryden and other officers were executing a search warrant in conjunction with Ryden's investigation into a string of armed robberies that occurred in Tulsa between June and July 2012. Dkt. 8-11, Tr. Trial vol. 4, at 23-24, 38. Ryden detained Adams as a person of interest and transported him to the police station for a voluntary interview.[5] *Id.* at 24-25. Adams denied involvement in the armed robberies but told Ryden he had information about the Ferrante murder. *Id.* at 25-27. After Adams told Ryden basic details about the murder, Ryden stopped the interview and called Detective Regalado, who then conducted his own interview with Adams. *Id.* at 29-30, 34.

Regalado testified that, during the videotaped interview, Adams told Regalado about two different conversations Adams had with Petitioner. Dkt. 8-11, Tr. Trial vol. 4, at 80-81, 114. The first conversation occurred about three weeks after the shooting when Adams went to see Petitioner at the home of Petitioner's girlfriend. *Id.* at 80. Adams told Regalado that Petitioner appeared upset and told Adams he had shot "the white girl" because he believed two rival gang members were in the Cadillac. *Id.* at 80. Petitioner also told Adams he used a "chopper," a term Regalado

---

[5] Detective Ryden was investigating the string of robberies that led to Petitioner's arrest on July 26, 2012. *See supra* n. 3. Ryden testified that he lacked probable cause to arrest Adams and that Adams voluntarily agreed to travel to the police station for the interview. Dkt. 8-11, Tr. Trial vol. 4, at 23-25, 38.

testified refers to an assault rifle.  Dkt. 8-11, Tr. Trial vol. 4, at 80.  Petitioner also told Adams he

shot at the back of the Cadillac five or six times and that he sat in the passenger seat while his

brother drove their sister's light-colored Chrysler Cirrus.  *Id.* at 80-81.  Adams told Regalado the

second conversation with Petitioner occurred when he went to Petitioner's aunt's house, located

at 1035 North Norfolk, so that he and Petitioner could burglarize a nearby house.  *Id.* at 81.  Adams

told Regalado that he saw Petitioner bury an assault rifle in the back yard.  *Id.*  Adams described

the rifle as being wrapped in a blue plastic dog food bag and other plastic and stated that police

could easily find the rifle because the burial spot was covered by two logs.  *Id.* at 81-82.  Based on

the information he received from Adams during the interview, Regalado obtained a search warrant

and recovered an SKS assault rifle that was buried in the back yard of the house located at 1035

Norfolk Avenue.  Dkt. 8-11, Tr. Trial vol. 4, at 82.  Through forensic testing, an analyst at the

Oklahoma State Bureau of Investigation conclusively determined that five of the six 7.62 x 39

shell casings recovered during the homicide investigation were fired from the SKS rifle that was

found buried in the back yard of Petitioner's aunt's house.  Dkt. 8-10, Tr. Trial vol. 3, at 255, 266-

69.

    Consistent with Regalado's testimony regarding the information he obtained from Adams

during the videotaped interview, Adams testified at trial that he spoke with Petitioner about two

weeks after the shooting.  Dkt. 8-10, Tr. Trial vol. 3, at 36-37, 92-100.  Petitioner told Adams he

had heard that two rival gang members, "Pud" and "Lil Boosie," had been seen driving a Cadillac

in the Plaza Hills area near 129th East Avenue.  *Id.* at 91, 95-96.  Petitioner also told Adams that

he and his brother, Antonio Daniels, were driving their sister's car near the Plaza Hills area when

they spotted a Cadillac they believed to be occupied by "Pud" and "Lil Boosie."  *Id.* at 95-96, 119.

According to Adams, Petitioner's brother, who was driving, "kind of followed [the Cadillac] a

little bit" before Petitioner leaned out the passenger window and shot at the Cadillac five to seven times with a "chop" or assault rifle. Dkt. 8-10, Tr. Trial vol. 3, at 94-98. Petitioner told Adams that "he accidentally hit the girl." *Id.* at 94. Adams further testified that he went to Petitioner's "auntie's house" about three weeks after Petitioner confessed to shooting Ferrante. Dkt. 8-10, Tr. Trial vol. 3, at 100-01, 122. According to Adams, he and Petitioner planned to break into the house next door to Petitioner's aunt's house. *Id.* at 101, 122. Adams testified that he saw Petitioner digging a hole to bury the murder weapon in a wooded area in the back yard of his aunt's house, that he briefly hopped over a fence to scope out the house next door, and that when he returned he saw Petitioner mark the spot where he buried the rifle with "a log or a piece of wood or something." *Id.* at 103-06, 146-47.

In short, the trial transcripts show that the Ferrante homicide investigation essentially stalled until Adams' voluntary interview with Detective Ryden led to his videotaped interview with Detective Regalado and further led, ultimately, to Adams' damning trial testimony against Petitioner. Consequently, there is no reasonable factual basis for the OCCA's determination that Petitioner failed to show that information from Adams' videotaped interview might be "helpful to his case." Dkt. 7-5, OCCA Op., at 5.

For these reasons, the Court concludes that the OCCA's decision on this portion of Petitioner's ineffective-assistance-of-counsel claim was based on an unreasonable determination of the facts presented in state court. Thus, § 2254(d) does not bar habeas relief and the Court will review this portion of his Sixth Amendment claim de novo under *Strickland*'s two-prong inquiry.

The performance prong requires only short work. As just discussed, the statements Adams provided during the videotaped interview identified Petitioner as the shooter and directly led to Regalado's recovery of the murder weapon, and Regalado testified at the preliminary hearing that

he videotaped his interview with Adams. Nevertheless, when Petitioner's appellate counsel reviewed the discovery turned over before trial, he found the excerpt from Regalado's notes but did not find the audio/video recording of the interview. Dkt. 7-3, at 4-6. This strongly supports Petitioner's position that trial counsel performed deficiently when he failed to obtain or review the videotape before trial.[6] Under the particular facts of this case, the Court finds that Petitioner has "overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

But the prejudice prong proves problematic for Petitioner. As previously stated, to establish prejudice under *Strickland*, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Viewing the record as a whole, the Court's confidence in the outcome of Petitioner's trial is not sufficiently undermined.

Even without the benefit of reviewing the videotape of Adams' interview, defense counsel challenged Adams' credibility and his motives throughout the trial. Counsel clearly identified Petitioner's main theory of defense in his opening statement: Adams, not Petitioner, was the shooter and Adams set Petitioner up to take the fall. Dkt. 8-9, Tr. Trial vol. 2, at 58-66. Defense

---

[6] Respondent argues that select excerpts of the trial transcript support that defense counsel reviewed Adams' videotaped interview before trial. Dkt. 7, at 17-18. The Court has reviewed the trial transcripts in their entirety. The excerpts cherry-picked by Respondent, neither standing alone nor placed in context of counsel's cross-examination of Adams, Regalado, or Ryden, support Respondent's assertion that counsel reviewed the videotaped interview in preparation for trial. Dkt. 7, at 16 & nn. 10, 11, 12. Moreover, appellate counsel's affidavit supports that counsel did not receive a copy of the videotape during discovery and thus, could not have viewed it before trial. Dkt. 7-3, at 4-5.

counsel elicited testimony from Adams and other witnesses to show that Adams had motive to shoot the intended targets—Justin Render and Kenneth Ferguson—because they belonged to a rival gang and either they or other members of their gang were involved in a shooting that injured Adams' brother several months before the Ferrante shooting. Dkt. 8-10, Tr. Trial vol. 3, at 59-71, 129-35. Counsel elicited testimony from Adams and Detective Ryden to emphasize that Adams first identified Petitioner as the shooter when Ryden questioned Adams about his possible involvement in a string of armed robberies. *Id.* at 140-43, 153, 155; Dkt. 8-11, Tr. Trial vol. 4, at 37. And he elicited testimony from Ryden and Adams that Adams was never charged for any of the robberies, even though he (1) drove a vehicle that matched the description of a vehicle seen at one of the locations that had been robbed (2) frequently visited the apartment where Ryden executed a search warrant and discovered items that had been stolen during one or more of the robberies, and (3) wore a medical boot on his ankle similar to one worn by a robbery suspect, as described by one of the robbery victims. Dkt. 8-10, Tr. Trial vol. 3, at 160; Dkt. 8-11, Tr. Trial vol. 4, at 37-41, 60-62. Defense counsel also elicited testimony from Adams that he had lied to law enforcement officers in the past. Dkt. 8-10, Tr. Trial vol. 3, at 152, 160. Finally, during closing argument, defense counsel emphasized that Adams had motive to shoot the intended targets, had the opportunity to bury the assault rifle where it was found, and could have known specific details about the shooting because he was the shooter. Dkt. 8-12, Tr. Trial vol. 5, at 41-49.

Despite counsel's advocacy, at the end of the trial the jury still had before it evidence that the assault rifle used to kill Ferrante was buried in the back yard of Petitioner's aunt's house. And the jury had testimony from Detective Regalado and Adams himself showing that the details of the shooting that were reportedly told to Adams by Petitioner were consistent with the physical

evidence found at the scene of the shooting and that the murder weapon was found exactly where

Adams testified that he saw Petitioner bury it.

In sum, applying *Strickland* and reviewing this portion of Petitioner's ground three claim

de novo, the Court finds that Petitioner cannot show prejudice resulting from trial counsel's failure

to obtain and review the videotape of Adams' interview before trial. For that reason, the Court

denies the petition as to this portion of ground three.

### C.      Prosecutorial misconduct (ground four)

In ground four, Petitioner claims he was deprived of his Fourteenth Amendment right to a

fair trial because the prosecutor "unfairly inflamed the passions and emotions of the jury" during

closing argument. Dkt. 1, at 4; Dkt. 7-2, Pet'r App. Br., at 22-24. Petitioner specifically takes

issue with the following remarks:

> State's Exhibit 107, a 100 round AR-15 magazine. Not a banana clip, ladies and
> gentlemen, a drum. It's a 100 round AR-15, same type of ammunition that would
> fit the gun found in the car with [Petitioner] two days before Kayla Ferrante was so
> viciously and brutally gunned down. State's Exhibit 103, the disassembled parts
> of an AR-15. And you heard the testimony, all you have to do is put them together
> and that gun will fit that magazine. Is that his mark?
>
> He was in a car, he wasn't going hunting, and he wasn't taking his gun to a safe.
> He told the officer he was there to sell those guns, but do you remember the
> condition? He was with three other males and three other handguns, a .357
> Magnum unloaded in the glove box—

Dkt. 7-2, Pet'r App. Br., at 23 (quoting Dkt. 8-12, Tr. Trial vol. 5, at 27, 28). At that point, defense

counsel objected and requested a sidebar. Dkt. 8-12, Tr. Trial vol. 5, at 28. At the bench, defense

counsel stated, "this seems to me that the State is attempting to put up an assumption in front of

the jury that my client, three other people, whom are members of other gangs, are out actively

hunting in the car." *Id.* The prosecutor responded that the remarks went to "a common scheme or

plan of identity" and were "part and parcel of gang evidence." *Id.* The trial court ultimately

overruled defense counsel's objection, stating it had not yet seen anything objectionable. Dkt. 8-

12, Tr. Trial vol. 5, at 29-30.

The OCCA considered Petitioner's prosecutorial-misconduct claim on direct appeal and rejected it. Applying state law, the OCCA reasoned that reversal would be required only if "the cumulative effect" of prosecutorial misconduct "deprive[d] the defendant of a fair trial." Dkt. 7-5, OCCA Op., at 5. The OCCA denied relief, concluding "the comments of the prosecutor did not deprive [Petitioner] of a fair trial." *Id.*

To obtain federal habeas relief on a prosecutorial-misconduct claim, a habeas petitioner must show, in light of the "entire proceedings," that the prosecutor's alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Although the OCCA referred only to state law in addressing Petitioner's prosecutorial-misconduct claim, the legal principle it applied mirrors the due-process standard from *Donnelly*. Accordingly, the Court will defer to the OCCA's decision on the prosecutorial-misconduct claim unless Petitioner demonstrates that the OCCA's application of the federal standard was objectively unreasonable. *Thornburg*, 422 F.3d at 1125.

The Court finds the OCCA's application of the due-process standard was not objectively unreasonable and that its decision does not rest on an unreasonable determination of the facts. As Respondent argues, the prosecutor's remarks referred to evidence that had been properly admitted at trial. Dkt. # 7, at 22. Specifically, Officer Jim Brill testified that he stopped Petitioner for a traffic violation on May 24, 2012, just two days before the Ferrante shooting, and Petitioner informed Brill that he had guns inside his car. Dkt. 8-10, Tr. Trial vol. 3, at 231-36. Three other males were inside the car, and Brill found four guns inside the car, including an AR-15 assault rifle and a 30-round magazine with bullets for an AR-15. *Id.* at 236-43. Petitioner told Brill he was taking two of the guns to a pawn shop to sell them. Dkt. 8-10, Tr. Trial vol. 3, at 242. The

record supports that the prosecutor's remarks were fair comments on the evidence. *See Thornburg*, 422 F.3d at 1131 (noting that prosecutors may "comment on and draw reasonable inferences from the evidence presented at trial"). And, in light of the entire proceedings, the Court is not convinced that the challenged comments impaired the jury's ability "to fairly judge the evidence." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006). As a result, the OCCA's rejection of Petitioner's prosecutorial-misconduct claim was not objectively unreasonable, § 2254(d) bars habeas relief, and the Court denies the petition as to ground four.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that no evidentiary hearing is necessary to resolve Petitioner's claims and that Petitioner has not shown that his current custody violates the Constitution. The Court therefore denies his petition for writ of habeas corpus. The Court further concludes that Petitioner has not made the showings necessary to obtain a certificate of appealability and the Court therefore declines to issue one. *See* 28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note in the record the substitution of Jim Farris in place of Janet Dowling as party Respondent.

2. Petitioner's request for an evidentiary hearing is **denied**.

3. The petition for writ of habeas corpus (Dkt. 1) is **denied**.

4. A certificate of appealability is **denied**.

5. A separate judgment shall be entered in this matter.

**DATED** this 22nd day of April 2020.

TERENCE C. KERN
United States District Judge